IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYMON MICKIANGELO BERRY, III, <br><br> Plaintiff, <br><br> v. <br><br> R. METCALFE, Correctional Sgt., <br><br> Defendant. | No. C 09-2027 MMC (PR) <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING PLAINTIFF'S MOTION TO SUBMIT ADDITIONAL DECLARATION** <br><br> **(Docket Nos. 18, 43)** |

On May 8, 2009, plaintiff, a California prisoner incarcerated at Corcoran State Prison ("Corcoran") and proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983. Now pending before the Court is defendant's motion for summary judgment. Plaintiff has filed opposition to the motion and defendant has filed a reply.

## FACTUAL BACKGROUND[1]

Plaintiff's complaint concerns the following events alleged to have occurred when he was incarcerated at Salinas Valley State Prison ("SVSP").

---

[1] The facts in the following section are undisputed and are drawn from plaintiff's verified complaint and the evidence submitted in support of and in opposition to the motion for summary judgment.

On April 13, 2008,[2] plaintiff, who was housed on the Facility A "sensitive needs yard" ("FA-SNY"), sent a letter of complaint to SVSP Warden Michael Evans ("Warden Evans") concerning plaintiff's having witnessed defendant Correctional Sgt. Metcalfe ("Metcalfe") and other correctional officers entering the cells of inmates on the FA-SNY while the inmates were still inside their cells. (Compl. ¶ 1, Ex. A.) Plaintiff expressed concern that such actions, which appeared to be for no legitimate reason, were a breach of institutional security and put both inmates and correctional staff in danger. (Id.)

On April 23, plaintiff had a fruitful meeting with Lt. J. Stevenson about the concerns raised by plaintiff in his letter. (Compl. ¶ 2.) Metcalfe briefly attended the meeting toward its end. (Id.)

On April 26, plaintiff was approached by inmate James White ("White"), who told plaintiff that Metcalfe had told White about plaintiff's letter to Warden Evans. (Compl. ¶ 3.) The next day, plaintiff sent a letter to Scott Kernan, Chief Deputy Secretary of the California Department of Corrections, objecting to Metcalfe's communication with White, and expressing concern that plaintiff would be retaliated against by staff for having written to Warden Evans. (Compl. ¶ 4, Ex. B.) Plaintiff sent copies of the letter to various prison officials, including Metcalfe. (Id.)

On May 3, White approached plaintiff and told him that Metcalfe had spoken to White the previous day, telling White, "Berry snitched on you!" and/or "Berry is a snitch!" (Compl. ¶ 5.) That same date, plaintiff filed an administrative appeal, complaining about Metcalfe's actions and expressing concern that Metcalfe's comments to White had the potential of placing plaintiff as well as prison staff at risk of injury. (Compl. Ex. C at 5, 7.)

During the month of May, the FA-SNY experienced increased violence among the Hispanic and Muslim populations. (Confid. Decl. of S. Henley in Supp. Def.'s Mot. Summ. J. ("Henley Decl.") (filed under seal) ¶ 4, Ex. A). On May 23, an administrative segregation unit placement notice was issued, stating plaintiff would be placed in administrative

---

[2] All dates referenced hereinafter are in 2008.

United States District Court
For the Northern District of California

1  segregation pending a confidential investigation into the violence on the FA-SNY.  (Decl. R.
2  Duncan Supp. Def.'s Mot. Summ. J. ("Duncan Decl.") ¶ 5, Ex. D.)  That same date, plaintiff
3  was placed in administrative segregation based on allegations by inmate confidential
4  informants in the FA-SNY that plaintiff was instigating violence.  (Compl. ¶ 6.)

   On July 14, plaintiff's administrative appeal concerning Metcalfe's actions was
6  partially granted at the second level of review, in that plaintiff's complaint was referred to the
7  Office of Internal Affairs for investigation.  (Compl. Ex. C at 3-4.)

   On July 21, plaintiff was informed that the investigation into the violence on the FA-
9  SNY had found no evidence to substantiate the confidential informants' allegations of
10 plaintiff's instigating violence, but, based on the confidential informants' allegations, it had
11 been determined that an "enemy situation" existed on the FA-SNY with respect to plaintiff,
12 and, therefore, plaintiff could not be returned to the FA-SNY.  (Compl. ¶ 6 ; Decl. S. Hatton
13 in Supp. Def.'s Mot. Summ. J. ("Hatton Decl.") ¶ 7, Ex. A.)

14 On July 31, prison officials decided to transfer plaintiff to another prison.  (Duncan
15 Decl. ¶ 8, Ex. H).

16 On September 4, plaintiff filed a third, i.e. Director's, level appeal, complaining that
17 he was not satisfied with the ongoing Internal Affairs investigation into Metcalfe's behavior,
18 because it was clear to plaintiff that plaintiff's placement in administrative segregation and
19 impending transfer were retaliatory responses to plaintiff's having written the letters of
20 complaint about Metcalfe and having filed the administrative appeal.

21 Plaintiff was transferred to Corcoran on September 22, 2008.  (Compl. ¶ 8, Duncan
22 Decl. ¶ 3, Ex. B.)

23 On January 5, 2009, plaintiff's appeal concerning the Internal Affairs investigation
24 was denied at the Director's level of review.  (Compl. Ex. C at 1-2.)

**DISCUSSION**

26 A.    Legal Standard

27 Summary judgment is proper where the pleadings, discovery, and affidavits show
28 there is "no genuine issue as to any material fact and that the moving party is entitled to

1  judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect
2  the outcome of the case. See Anderson v. Liberty Lobby, Inc. Anderson, 477 U.S. 242, 248
3  (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable
4  jury could return a verdict for the nonmoving party. Id.

It is the moving party's burden to establish that no genuine issue of material fact exists and that the moving party is entitled to judgement as a matter of law. British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978), cert. denied, 440 U.S. 981 (1979). Where the defendant is the moving party, the court will grant summary judgment against a plaintiff "who fails to make a showing sufficient to establish the existence of an element essential to that [plaintiff's] case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

B.   Retaliation

Plaintiff claims that Metcalfe violated plaintiff's First Amendment rights when, in retaliation for the two letters of complaint plaintiff wrote in April 2008 about Metcalfe's actions, Metcalfe spread rumors that plaintiff was a snitch, which resulted in plaintiff's placement in administrative segregation and subsequent transfer to Corcoran.

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983. Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977). "Within the prison context, a viable claim of First Amendment retaliation entails five basic

4

elements: (1) An assertion that a state actor took some adverse action against a prisoner (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The prisoner must prove all the elements of a viable retaliation claim, including "the absence of legitimate correctional goals for the conduct of which he complains." Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

For purposes of any type of retaliation claim, a plaintiff must show a causal connection between a defendant's retaliatory animus and a subsequent injury. Hartman v. Moore, 547 U.S. 250, 259 (2006). The requisite causation must be but-for causation; in other words, without the prohibited animus, the adverse action would not have been taken. Id. at 260. Upon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the adverse action. Id. If there is a finding that retaliation was not a but-for cause of the action of which the plaintiff complains, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of retaliatory animus in the official's mind. Id. "It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." Id.

C.  Plaintiff's Claim

In order to prevail on his retaliation claim, plaintiff, as noted, must produce evidence that demonstrates Metcalfe took adverse action against plaintiff because of plaintiff's letters of complaint, and that such action was the "but-for" cause of a subsequent injury to plaintiff.

1.  Metcalfe's Statement to Inmate White

Plaintiff alleges that Metcalfe told inmate White that "Berry snitched on you!" and/or "Berry is a snitch!" after plaintiff wrote his second letter of complaint to supervisory officials, in which plaintiff complained that Metcalfe had spoken with White about plaintiff's first letter of complaint concerning Metcalfe and other correctional officers' entering

5

1  occupied cells in the FA-SNY.  (Compl. ¶ 5.)  In support of his assertion that Metcalfe's
2  statement caused injury to him, plaintiff relies on Valandingham v. Bojorquez, 866 F.2d 1135
3  (9th Cir. 1989), wherein the plaintiff alleged that because he had petitioned prison and
4  government officials for redress of his grievances, two prison officers had conspired to label
5  him a "snitch" in order to subject him to life-threatening retaliation by fellow inmates and, as
6  a result, he was approached by fellow prisoners and threatened with harm.  Id. at 1138.  The
7  Ninth Circuit held such facts were sufficient to plead a claim under 42 U.S.C. § 1983 "for
8  violation of [the plaintiff's] right to be protected from violence while in custody," and "for

9  In his motion for summary judgment, Metcalfe argues that plaintiff has not presented
10 evidence sufficient to raise a triable issue as to whether Metcalfe's alleged statement resulted
11 in injury to plaintiff.  In particular, Metcalfe argues, Valandingham is distinguishable on its
12 facts because Metcalfe's statement to White that plaintiff was a snitch did not declare
13 plaintiff a snitch as to other inmates' behavior.  In particular, Metcalfe notes that stating an
14 inmate "snitched" on a prison official is distinguishable from stating an inmate is an
15 informant, or "snitch," as used in its ordinary sense, because the consequences of labeling an
16 inmate a snitch on other inmates, as was the case in Valandingham, are distinctly different
17 from the consequences of describing an inmate as complaining about prison staff.  Further,
18 Metcalfe argues, the inmate in Valandingham alleged that he had been threatened with harm
19 as a result of being labeled a "snitch," whereas plaintiff has not shown either actual or
20 threatened injury as a result of Metcalfe's statement.

21 In opposition, plaintiff argues he was harmed by Metcalfe's statement to White
22 because such statement led White to believe plaintiff had snitched on White after White told
23 plaintiff about White's conversation with Metcalfe and, as a result, plaintiff was "confronted"
24 by White shortly after Metcalfe's statement, and subsequently was placed in administrative
25 segregation.  (Opp'n at 10.)  In support of such argument, plaintiff has submitted a
26 declaration from inmate Kevin Pritchette ("Pritchette"), in which declaration Pritchette avers
27 (1) that he was White's cellmate during the relevant time period, (2) that on or about May 2,
28 Metcalfe came to their cell and told White plaintiff had snitched on White by telling prison

6

officials about White's conversation with Metcalfe, (3) that other inmates heard Metcalfe's comments, and (4) that Pritchette and White, concerned those comments placed plaintiff in danger, told plaintiff what Metcalfe had said, and subsequently cooperated with an Internal Affairs investigation into Metcalfe's conduct.  (Pritchette Decl. ¶ 6-8.)[3]

The Court finds plaintiff has failed to present evidence that raises a triable issue as to whether Metcalfe's alleged use of the word "snitch" caused injury to plaintiff.  The facts of Valandingham are distinguishable from those herein, as Valandingham concerned the alleged intent of prison officials to have a prisoner killed by other inmates by labeling him a snitch, and an allegation of subsequent threats of harm by inmates against the plaintiff.  As noted, the Ninth Circuit found such allegations, if true, could support a claim for the violation of a prisoner's right to be protected from violence at the hands of other prisoners.  See Valandingham, 866 F.2d at 1138.  Here, plaintiff has not produced evidence that demonstrates Metcalfe's statements to White led any inmate either to threaten or harm plaintiff.  Specifically, plaintiff has not shown that either White or Pritchette threatened or harmed plaintiff, but, rather, that White and Pritchette, concerned that Metcalfe's statements placed plaintiff in danger, told plaintiff what Metcalfe had said and also spoke with Internal Affairs investigators about Metcalfe's actions.  Plaintiff has not shown that any inmate other than White and Pritchette was privy to the conversation between White and Metcalfe.  Rather, the only evidence produced by plaintiff to support such proposition are the hearsay statements by other inmates housed nearby.  Such evidence is not admissible where, as here, it is offered to prove the truth of those statements allegedly made by the other inmates.  See

---

[3] Pritchette's declaration was filed approximately one month after plaintiff filed his opposition, and plaintiff has moved the Court to admit the declaration as newly-obtained evidence in support of plaintiff's opposition.  In support of his motion, plaintiff states he was unable to submit the declaration earlier because it was only after his opposition was filed that plaintiff learned Pritchette had been moved to Corcoran.  In view of plaintiff's pro se prisoner status, and no objection to admission of the declaration having been made by defendant Metcalfe, plaintiff's motion will be granted.

7

Fed. R. Evid. 801(c); Fed. R. Civ. P. 56(e)(1).[4]  Further, even if such evidence were admissible, it shows no more than the other inmates' curiosity about what Metcalfe had said, not that they threatened or harmed plaintiff as a result thereof.

### 2. Metcalfe's Statement to Inmate Parnell

Plaintiff additionally claims that Metcalfe injured plaintiff by causing him to be placed in administrative segregation and subsequently transferred to Corcoran.  Specifically, plaintiff claims he was placed in administrative segregation based on the false allegations of inmate confidential informants, who, after learning plaintiff had written the letters of complaint about Metcalfe, lied to prison officials about plaintiff in order to protect Metcalfe. (Compl. ¶ 6, Opp'n. at 9.)  Further, plaintiff claims, Metcalfe conspired with those inmates to have plaintiff placed in administrative segregation and transferred.  (Opp'n at 9, 11.)

In support thereof, plaintiff, in his opposition, asserts for the first time that Metcalfe, in addition to telling White that plaintiff was a snitch, also told a prisoner identified as "Inmate Parnell" ("Parnell") that plaintiff had snitched on Metcalfe.  According to plaintiff, Parnell was involved in illegal activities to which Metcalfe turned a blind eye and, consequently, Metcalfe told Parnell that plaintiff was a snitch, knowing Parnell would have reason to harm plaintiff to protect Metcalfe.  In support thereof, plaintiff has submitted the declarations of two inmates, specifically, Lorenzo Salas ("Salas") and Lawrence Cuevas ("Cuevas"), who aver that Parnell told them Metcalfe assisted Parnell in carrying out illegal drug activities at SVSP and, therefore, when Metcalfe told Parnell that plaintiff had snitched on Metcalfe, Parnell falsely told prison officials that plaintiff was a danger to the security of the FA-SNY, resulting in plaintiff's placement in administrative segregation and subsequent transfer.  (Opp'n Ex. G (Salas Decl.) ¶ 12; Ex. H (Cuevas Decl.) ¶ 12.)

Metcalfe objects to plaintiff's reliance on the Salas and Cuevas declarations as inadmissible hearsay, noting such statements are offered to prove the truth of Parnell's alleged assertions.  Additionally, Metcalfe argues that plaintiff has not presented any

---

[4]Moreover, the declaration is unclear as to what, if anything, any such other inmate heard.

8

evidence that demonstrates Metcalfe was involved in a conspiracy with inmates who provided false information to prison officials about plaintiff.

The Court agrees that the declarations of Salas and Cuevas are not admissible to establish the truth of any of Parnell's statements, i.e., that Metcalfe told Parnell that plaintiff was a snitch, that Metcalfe sanctioned Parnell's illegal activities, or that Parnell, in order to protect his relationship with Metcalfe, falsely told prison officials plaintiff was a threat to the security of the FA-SNY. Consequently, there is no evidence that demonstrates Metcalfe told Parnell that plaintiff was a snitch and that, because of such information, Parnell either threatened or harmed plaintiff. Further, plaintiff has not presented any evidence to support his conclusory assertion that Metcalfe engaged in a conspiracy with inmates who provided false information about plaintiff to prison officials.

3. <u>Conclusion</u>

Based on the above, the Court concludes plaintiff has failed to present evidence that raises a triable issue as to whether defendant Metcalfe retaliated against him, as plaintiff has failed to demonstrate a causal connection between Metcalfe's alleged statement to inmate White that plaintiff was a snitch, and any subsequent injury to plaintiff. See Hartman, 547 U.S. at 259. In particular, plaintiff's assertion, that Metcalfe told inmate Parnell that plaintiff was a snitch and encouraged Parnell to provide false information about plaintiff to prison officials, is not supported by admissible evidence, and plaintiff has presented no evidence to support his claim that Metcalfe encouraged inmates other than Parnell to provide false information about plaintiff to prison officials. Accordingly, summary judgment will be granted in favor of defendant Metcalfe.[5]

---

[5] In light of the above findings, the Court does not reach defendant's alternative argument that he is entitled to qualified immunity. See Saucier v. Katz, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Defendant's motion for summary judgment is hereby GRANTED. (Docket No. 18.)

2. Plaintiff's motion to admit the newly-obtained declaration is hereby GRANTED. (Docket No. 43.)

This order terminates Docket Nos. 18 and 43.

The Clerk shall enter judgment in favor of defendant Metcalfe and close the file.

IT IS SO ORDERED.

DATED: March 24, 2011

_____
MAXINE M. CHESNEY
United States District Judge